# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

May 6, 2014

Lyle W. Cayce
Clerk

No. 13-50599

PAULINA MARQUEZ, Individually and as Next Friend of C.M., IV, a Minor,

Plaintiff - Appellee

v.

BARBARA GARNETT,

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:13-CV-168

Before JONES, SMITH and OWEN, Circuit Judges.

EDITH H. JONES, Circuit Judge: *

Barbara Garnett ("Garnett"), a teacher's aide at a Texas public school, appeals the district court's denial of qualified immunity in a suit against Garnett by Paulina Marquez ("Marquez"), mother of C.M., alleging violations of C.M.'s substantive due process rights under 42 U.S.C. § 1983. After due consideration, we REVERSE and REMAND for dismissal of the case against Garnett.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-50599

## I.     FACTS AND PROCEEDINGS

C.M. attended Roy Benavidez Elementary School (the "School"), which is a part of the South San Antonio Independent School District (the "School District") in San Antonio, Texas.  On March 4, 2011, C.M. was seven years old and was severely autistic, physically disabled, and unable to speak.  He required constant supervision in a special-needs classroom.  This classroom was staffed by one teacher and three teacher's aides, one of whom was Garnett.

According to the amended complaint, C.M. picked up a compact disc, belonging to Garnett, which was left out on a table in the classroom, and began sliding the disc across the table.  Garnett, in reaction, "cursed and yelled at C.M., grabbed him from behind in a forceful and frightening manner, shoved him to the side and repeatedly kicked [him]."  After the incident, C.M. "was scared" and "was not the same person."  His "development was significantly set back" and he "has since been diagnosed with posttraumatic stress disorder." Marquez noticed bruises on C.M.'s body, though the complaint does not identify other specific physical injuries.  For her conduct, Garnett was charged in state court with assault causing bodily injury.  She was later placed on administrative leave and was required to surrender her teaching certificate.

Marquez, individually and as next friend of C.M., sued Garnett, School Principal Brenda Riley ("Riley")[1] and the School District in federal court. In her first amended complaint, Marquez asserted 42 U.S.C. § 1983 claims against all defendants, assault and battery claims against Garnett, and negligence and intentional infliction of emotional distress claims against Garnett and the principal.  The Section 1983 claim against Garnett alleged that, in assaulting C.M., Garnett deprived C.M. of his constitutionally recognized liberty interest to be free from abuse.

---

[1] Riley has not been served and has not made an appearance in this case.

No. 13-50599

Garnett and the School District moved to dismiss the first amended complaint for failure to state a claim and for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(6).  Garnett asserted that she was entitled to qualified immunity.  The district court granted in part and denied in part the motion to dismiss.  It held that the state law tort claims were barred by Section 101.106 of the Texas Tort Claims Act.

However, the court held that Marquez had asserted a plausible Section 1983 claim against Garnett and that Garnett was not entitled to qualified immunity.  The court began by addressing the first part of the qualified immunity inquiry: whether, assuming the facts in the complaint to be true, Garnett violated C.M.'s substantive due process right to be free from bodily harm.  Quoting *Fee v. Herndon,* 900 F.2d 804 (5th Cir. 1990), the court stated: "[c]orporal punishment in public schools is a deprivation of substantive due process when it is arbitrary, capricious, or wholly unrelated to the legitimate state goal of maintaining an atmosphere [conducive] to learning."  Under this precedent, the court "decline[d] to conclude that defendant Garnett's actions toward C.M., conduct which resulted in criminal charges, [were] necessarily in furtherance of maintaining discipline, punishing C.M. for some kind of school related misconduct, or the legitimate goal of maintaining an atmosphere conducive to learning."  The court thus held that Garnett's alleged conduct violated C.M.'s right to be free from bodily harm.

The court next addressed the second part of the qualified immunity inquiry: whether the right violated was clearly established.  The court held that "the right of a student to be free from assault by a school official was clearly established at the time of the incident in question and defendant Garnett knew, or should have known, her actions, if proven, violated C.M.'s constitutional rights."  In doing so, the court noted allegations that Garnett's actions were "unlawful, deliberate, malicious, reckless, wanton, unreasonable,

No. 13-50599

arbitrary, capricious and wholly unrelated to any legitimate state goal or interest." Because Garnett's alleged conduct violated a clearly established right, the court refused to dismiss on the basis of qualified immunity.

The district court also held that cognizable Section 1983 claims had been asserted against the School District and the principal. Pending before this court is Garnett's interlocutory appeal challenging the district court's decision to deny her qualified immunity.

## II.    DISCUSSION

Garnett contends that the district court erred in not granting her motion to dismiss and that she is entitled to qualified immunity because her actions fit within this circuit's corporal punishment case law. For the reasons stated below, we agree with Garnett.

We review *de novo* a district court's refusal to dismiss on the basis of qualified immunity. *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011)(en banc). In doing so, the court accepts "all well pleaded facts as true and draw[s] all reasonable inferences in favor of the nonmoving party." *Id.* However, the court may "not presume true a number of categories of statements, including legal conclusions; mere labels; [t]hreadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement." *Id.* (alteration in original; internal quotation marks omitted).

"To state a Section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted), *cert. denied*, 2014 WL 1659881 (April 28, 2014) (No. 13-693). "A [S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee*, 900 F.2d at 807.

4

No. 13-50599

Qualified immunity shields a government official from Section 1983 liability if the official's acts were objectively reasonable in light of clearly established law at the time of the official's conduct. *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005). "When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *Id.* We evaluate qualified immunity under a two-part test: (1) "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right," and (2) "whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S. Ct. 808, 816 (2009) (internal quotation marks omitted). If both inquiries are answered in the affirmative, the official's alleged conduct "violated a clearly established constitutional right" and the official is not entitled to qualified immunity. *Id.*

In *Ingraham v. Wright*, the Supreme Court rejected Eighth Amendment and procedural due process claims for corporal punishment and held that while "corporal punishment in public schools implicates a constitutionally protected liberty interest," the state may impose sufficient post-punishment safeguards to satisfy procedural due process concerns. 430 U.S. 651, 672, 682, 97 S. Ct. 1401, 1413, 1418 (1977). Consequently, while "paddling of recalcitrant children has long been an accepted method of" discipline in the schools, "reasonable limits traditionally have been imposed upon student discipline so as not to give teachers a license to commit state-sanctioned child abuse." *Fee*, 900 F.2d at 807-08. In *Fee*, when a sixth grade special-education student became disruptive during classroom instruction, the principal paddled the child three times on the buttocks, causing welts and scrapes on the child's body. 900 F.2d at 806. The Fees alleged that their son was hospitalized as a consequence of the beating and forced to spend a total of six months in a psychiatric ward. *Id.* The court stated that "corporal punishment in schools

5

'is a deprivation of substantive due process when it is arbitrary, capricious, or wholly unrelated to the legitimate state goal of maintaining an atmosphere conducive to learning.'" *Id.* at 808 (citing *Woodard v. Los Fresnos Ind. Sch. Dist.*, 732 F.2d 1243, 1246 (5th Cir. 1984)). We reasoned, however, that

> [I]njuries sustained incidentally to corporal punishment, irrespective of the severity of these injuries or the sensitivity of the student, do not implicate the due process clause *if* the forum state affords adequate post-punishment civil or criminal remedies for the student to vindicate legal transgressions. . . . [S]tates that affirmatively proscribe and remedy mistreatment of students by educators do not, by definition, act "arbitrarily," a necessary predicate for substantive due process relief.

*Id.* (italics in original). We observed that Texas "afford[ed] students post-punishment criminal or civil remedies" if teachers impose more than a reasonable measure of corporal punishment. *Id.* In the context of school discipline, and with adequate state remedies in place, we affirmed the dismissal of the substantive due process claim. *Id.* at 809-10.

The *Fee* analysis was applied to dismiss a Section 1983 suit against a Texas gym teacher in *Moore v. Willis Independent School District,* 233 F.3d 871, 873 (5th Cir. 2000)(gym teacher told an eighth-grade student to do 100 "squat-thrusts" as punishment for talking during roll call, and the student allegedly suffered injuries as a result). Because Texas provided criminal and civil remedies, and the conduct at issue was corporal punishment, no substantive due process right was violated. *Id.* at 875-76. On the other hand, a substantive due process claim against a public school teacher was allowed to proceed where the teacher's conduct lacked any pedagogical justification. *See Jefferson v. Ysleta Independent School District*,  817 F.2d 303, 304 (5th Cir. 1987) (teacher tied a second-grade student to a chair using a jump rope over the course of two school days without any punishment or disciplinary justification.)

No. 13-50599

Stripped of multiple conclusory statements in the amended complaint, the allegation here is that the student was sliding Garnett's compact disc across a table during class time and Garnett reacted. As in *Fee* and *Moore*, the setting is pedagogical, and C.M.'s action was unwarranted. The inference must be that Garnett acted to discipline C.M., even if she may have overreacted.[2] Because Marquez's pleadings demonstrate corporal punishment rather than a mere attack, the only remaining question is the sufficiency of state remedies. The parties do not dispute that, as we found in *Fee* and *Moore*, Texas provides criminal and civil remedies to parents like Marquez.[3] In this case, Garnett was charged in state court with assault causing bodily injury, was placed on administrative leave, and was required to surrender her teaching certificate in response to her conduct. Marquez has not shown that C.M.'s substantive due process rights were violated.

Fifth Circuit law squarely forecloses Marquez's claim against Garnett. Accordingly, she was entitled to qualified immunity. For these reasons, the judgment of the district court is **REVERSED** and **REMANDED** for dismissal of the case against Garnett.

---

[2] *See also Clayton ex rel. Hamilton v. Tate Cnty. Sch. Dist.*, No. 13-60608, 2014 WL 1202515 (5th Cir., Mar. 25, 2014) (dismissing constitutional claims against teacher for effects of paddling in context of corporal punishment); *Flores v. Sch. Bd. of Desoto Parish*, 116 F. App'x 504, 510-11 (5th Cir. 2004)(the teacher's "acts apparently were meant to punish [the student] and did not constitute a random, malicious, and unprovoked attack" and were therefore "properly characterized as corporal punishment"; student could not state a claim for relief).

[3] The pertinent Texas statutes were amended in 2003, *see* Tex. Civ. Prac. & Rem. Code § 101.106(f) (West 2013), and no published opinion since has addressed this issue, nor have the parties to this case briefed the new law.